IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KEVIN M. LIND, )
)
       Plaintiff, )     4:06CV3251
)
v. )
)     MEMORANDUM AND ORDER
SOCIAL SECURITY ADMINISTRATION, )
)
       Defendant. )
)

      This suit involves an application for supplemental security income (SSI) benefits based on disability under Title XVI, 42 U.S.C. §§ 1381-1383d of the Social Security Act. The ALJ denied the plaintiff's application, and the Appeals Council denied the plaintiff's request to review the ALJ's decision. The plaintiff now seeks judicial review of the ALJ's decision, because it represents the final decision of the Social Security Administration. The parties filed supporting and opposing briefs. Filing Nos. 16, 20. The court has carefully reviewed the record, briefs, and the relevant caselaw and determines benefits should be awarded in this case.

      **Prior Proceedings**

      Kevin M. Lind, with the assistance of his mother, Lois C. Lind (hereinafter "Mother"), filed for SSI on March 5, 1993. (TR. 98-110). On his SSI application, the plaintiff listed "learning disability" as his type of impairment, and he asserted that his impairment began in 1991. *Id.* at 99. The plaintiff was eight years old when he filed his application. *Id.* at 98. The Social Security Administration awarded plaintiff benefits through the age of eighteen. (TR. 13).

According to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996. Pub. L. No. 104-193, 110 Stat. 2105 (1996), a redetermination must be initiated prior to the individual's attainment of age nineteen. (TR. 13). On February 29, 2000, defendant sent plaintiff a notice of SSI medical review to determine if a disability still existed. (TR. 25-27). On September 14, 2000, the defendant notified the plaintiff that he would continue to receive SSI. (TR. 28-29). On July 8, 2003, defendant sent plaintiff a notice indicating the plaintiff's SSI would terminate. (TR. 30-33). The notice read, "Because Kevin's condition does not prevent him from performing all types of work as required by the adult guidelines for disability, it is no longer possible to find him eligible for disability benefits." (TR. 30).

On July 16, 2003, plaintiff filed a request for reconsideration. (TR. 34)[1]. Plaintiff's Mother filed a statement for the plaintiff indicating their desire to continue benefits while the appeal was pending. (TR. 36). The Disability Hearing Officer's Report of Disability Hearing (hereinafter "DHOR") was dated June 29, 2004. (TR. 37-48). In the report, the plaintiff stated the impairments which prevent him from working include his behavior disorder, and anger and truancy. *Id.* at 39. The plaintiff claimed his behavior problems had improved without the help of anger management classes. *Id.* The Mother claimed her son is "not able to fill out an apps" or "read well." *Id.*

The plaintiff stated his typical day includes sleeping until noon when his Mother wakes him up. *Id.* at 41. Plaintiff helps by cleaning, washing dishes, and taking out the

---

[1] Plaintiff's Mother requested reconsideration because her son is still in school taking reading classes. She also mentioned her son is considered a slow learner. (TR. 34).

trash.[2]  *Id.*  Plaintiff's Mother does the laundry, although plaintiff essentially knows how to do such a task, but he has trouble with measuring.  *Id.* at 41.  Plaintiff does not drive nor does he have a checking account.  *Id.*  Plaintiff buys personal items including clothes, but his Mother always purchases the groceries.  *Id.*

The plaintiff stated he has a mental limitation that includes a lack of understanding because his mind is slower than most.  *Id.* at 43.  Also, the plaintiff "throws a fit" when someone says something bad about his Mother or, in other words, the plaintiff is very protective of this Mother.  *Id.*  The plaintiff's vocational history includes working at Sam's Club as a cart runner, Village Inn as a busboy, cleaning up and running a carnival game at the Fairgrounds, and lawn mowing and detassaling.  *Id.* at 44.  The closing statement of the DHOR notes reading and math are major problems for the plaintiff in addition to his behavioral problems.  *Id.* at 46.  Apparently, the plaintiff's behavioral problems are associated with money, and the plaintiff is not able to cope with a lack of money.  *Id.*  If the plaintiff does not get what he wants, he "throws a fit," pouts, and goes to his room.[3]  *Id.*

On July 2, 2004, a disability examiner denied the continuation of the plaintiff's benefits.  (TR. 50).  The defendant notified plaintiff of his right to request a hearing with an administrative law judge (hereinafter "ALJ").  *Id.*  On July 12, 2004, the plaintiff requested a hearing before the ALJ.  (TR. 61-2).  The hearing occurred on June 17, 2005.[4]  (TR. 86).

---

[2] Mother says plaintiff helps with chores, but she must inform him of the best way to perform the chore.  (TR. 42).

[3] On June 1, 2000, Michalla Schartz, the Individual Education Program Manager (hereinafter "IEP"), found the plaintiff has "few coping skills with frustration.  He has problems understanding boundaries and dealing with anger."  (TR. 186).

[4] Two previous hearings were scheduled for March 24, 2005, and May 4, 2005.  They were cancelled and rescheduled for June 17, 2005, which was the actual date the hearing was held.

The ALJ requested Steve H. Kuhn, a vocational expert, to appear at the hearing. (TR. 89-90).

**ALJ's Findings**

The ALJ found the plaintiff not disabled and thus ineligible for SSI benefits. (TR. 13-19). In the first step of the process, the ALJ found that the claimant has not engaged in substantial gainful activity for the pertinent period of this case. *Id.* at 13. The next step requires the ALJ to determine whether the claimant has a "severe" impairment. *Id.* at 14. The ALJ stated, "A 'severe' impairment is one that has more than a minimal effect on the individual's ability to perform basic work activities." *Id.*

In analyzing the second step, the ALJ found the plaintiff participated in special education classes during high school and had a poor academic record. *Id.* The plaintiff also had some behavioral problems, because he associated with a "bad crowd" and the court placed him on probation for shoplifting. *Id.* Also, the ALJ found the plaintiff was occasionally truant from school. *Id.* Because of the shoplifting and truancy from school, the plaintiff was placed in a group home. *Id.* The ALJ noted that the plaintiff's behavior notably improved at the facility. *Id.*

On May 27, 2003, the plaintiff underwent a consultative psychological assessment conducted by Daniel L. Ullman, Ph.D., a licensed clinical psychologist. (TR. 397-402). Dr. Ullman administered a Wechsler Adult Intelligence Scale-Third Edition (WAIS-III). (TR. 14). The plaintiff scored a verbal scale I.Q. of 78, performance scale I.Q. of 77, and a full

scale I.Q. of 76[5]. *Id.* However, in Dr. Ullman's Psychological Report, the test scores indicated the plaintiff may have taken a similar type of intelligence test in the past, therefore his scores were likely inflated. (TR. 397). Nonetheless, the ALJ found the test scores to be valid even though plaintiff's counsel disagreed. (TR. 14-5). The ALJ further found that "[o]verall, the claimant's functioning appeared consistent with borderline abilities and his past disruptive behavior appeared to be under better control." (TR. 14). Dr. Ullman diagnosed the plaintiff as having "disruptive behavior disorder." (TR. 399). The plaintiff's Global Assessment of Functioning (GAF) was assessed at 61, indicating only mild to moderate symptomatology.[6] *Id.*

The ALJ found, "the plaintiff has the following 'severe' impairments: borderline intellectual functioning and a behavioral disorder." (TR. 18). However, the ALJ found, "The plaintiff has no impairment, either singly or in combination, that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4." *Id.* The ALJ further found the plaintiff was not entirely credible regarding his inability to work. *Id.*

The ALJ found the plaintiff has no exertional impairments, as all his impairments relate to mental limitations. (TR. 18). Additionally, the ALJ stated, "The claimant has mild limitations in his activities of daily living, moderate limitations in social functioning, and mild limitations in his ability to concentrate, persist and maintain pace. The claimant also has

---

[5] On July 8, 2000, the plaintiff took the Wechsler Intelligence Scale for Children-III. (TR. 393-4). Plaintiff received a verbal I.Q. score of 73, a performance I.Q. score of 70, and a full scale I.Q. score of 69. *Id.* Dr. Jack J. Kramer, who wrote the psychological report, stated the examiner found the scores appeared higher than past results. *Id.* Plaintiff's past test scores were in the middle 50's and upper 60's. *Id.* Nonetheless, the examiner found the results to be "generally reliable." *Id.*

[6] The Global Assessment of Functioning (GAF) Scale is a rating system for reporting the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision (DSM-IV-TR) 33 (4th ed. 2000).

moderate limitations in his ability to perform detailed work." *Id.* The ALJ found the plaintiff has trouble with math, reading and filling out job applications but can perform non-complex repetitive unskilled work regularly. *Id.*

The ALJ found the plaintiff does not have a high school education.[7] (TR. 18). The ALJ stated, "Considering the plaintiff's age classification,[8] education, vocational history, and above found residual functional capacity, the claimant can perform other work found in significant numbers in the national economy." *Id.* The vocational expert testified the plaintiff could perform jobs as a hand packer (920.687-014), vehicle washer (915.667-017), and kitchen helper (318.687-010). [9] *Id.* On September 14, 2006, the Appeals Council denied the plaintiff's request to review the ALJ's decision, and the plaintiff filed this lawsuit seeking continued benefits. (TR 5-7).

**Legal Standard**

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is disabled when the claimant is "not only unable to do his previous work but cannot, considering . . . his age, education and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy . . .

---

[7] The record contains a "notice of discontinuation of special education services" on November 1, 2004. (TR. 307). During the ALJ hearing, the plaintiff said he received a certificate but did not graduate. (TR. 444). The plaintiff maintains the certificate states, "[Plaintiff] took the required classes." *Id.*

[8] The ALJ found the claimant's age is defined as that of a "younger individual." (TR. 18).

[9] These jobs are selected from the Dictionary of Occupational Titles.

either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

An ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir.1990). "Substantial evidence is that which a reasonable mind

would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (*citing Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

**Discussion**

Mental retardation refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The record indicates the plaintiff meets this requirement because he received benefits since 1993 until the payments were discontinued in July of 2003. The plaintiff must also meet one of four criteria described in subsections A, B, C, and D. The plaintiff argues he should have qualified for benefits under listing 12.05(C). The requirements a claimant must possess are, "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

The plaintiff argues the ALJ used an invalid test in determining whether the plaintiff met the requirements under listing 12.05(C). The court finds this argument meritorious.

8

Dr. Ullman specifically stated in his psychological report, "It was noticeable that Mr. Lind has taken the same type of intelligence test battery in the past as he could pre-emptively provide the instructions for subtests or knew which subtest was going to be administered next. As such, his performance is viewed as clearly being influenced by practice effects . . . There were signs that he has taken a similar type of intelligence test in the past and therefore, his scores are likely inflated." (TR. 397). Contrary to Dr. Ullman's report, the ALJ concluded these scores were valid. Dr. Ullman's report mentions nothing of the scores being valid but states that the scores are "likely inflated" and "influenced by practice effects." Thus, the court finds the ALJ's decision that the May 2003 IQ test was valid is not supported by substantial evidence.

Because Dr. Ullman found the scores inflated, the court must consider what IQ test should be applied to 12.05(C). The Eighth Circuit has found that "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *Muncy v. Apfel* 247 F.3d 728, 734 (8th Cir. 2001); *see, e.g.*, *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir.1985) (absent contrary evidence, an IQ test taken after the insured period correctly reflects claimant's IQ during the insured period); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir.1986) (claimant had low I.Q. during onset of disability in 1979 rather than just when first IQ tested in 1982). In this case, the court assumes the plaintiff's score has remained relatively constant over time. Thus, the court defers to the previous test in Dr. Kramer's psychological report of July 24, 2000, which test was administered July 8, 2000.

The test from July 2000 falls within the guidelines of 12.05(C). The plaintiff received a verbal I.Q. score of 73, a performance I.Q. score of 70, and a full scale I.Q. score of 69.

As such, the plaintiff meets the requirements of 12.05(C). Moreover, Dr. Kramer mentioned in the psychological report that the examiner found these scores to appear slightly higher than past scores but found the scores "generally reliable." According to the psychological report, these scores are still somewhat higher than what may be the plaintiff's true abilities. This finding further devaluates the ALJ's use of the "likely inflated" test. It is the finding of this court that the July 8, 2000, test is valid and fulfills the requirement of the first prong of 12.05(C).

In addition to this requirement, a plaintiff seeking benefits under 12.05(C) must also have "a physical or other mental impairment imposing an additional and significant work-related limitation of function. " 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). "A physical or other mental impairment is sufficient to satisfy the second part of this test when such impairment has a 'more than slight or minimal' effect on [the claimant's] ability to perform work." *Buckner v. Apfel*, 213 F.3d 1006 (*quoting Sird v. Chater*, 105 F.3d 401, 403 (8th Cir. 1997)). As stated before, a "severe" impairment is an impairment that has more than a minimal effect on the plaintiff's ability to work. The ALJ found the plaintiff had "severe" impairment - namely, a behavioral disorder. The court finds that the ALJ's determination regarding this finding is supported by substantial evidence. Specifically, the plaintiff was sent to a group home for shoplifting; the plaintiff throws a fit when someone mentions something bad about his mother; and the IEP manager found the plaintiff to have "few coping skills with frustration."

Although he has not participated in any anger management classes, the plaintiff claims to have corrected his behavioral problem. Contrary to the plaintiff's belief, Dr. Ullman diagnosed the plaintiff with "disruptive behavior disorder." According to American

Psychiatric Association (hereinafter "APA"), "This category is for disorders characterized by conduct or oppositional defiant behaviors that do not meet the criteria for Conduct Disorder or Oppositional Defiant Disorder . . . but in which there is clinically significant impairment." American Psychiatric Association *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision (DSM-IV-TR) 103 (4th ed. 2000).  This finding is with merit.  A few of the criteria for Oppositional Defiant Disorder and Conduct Disorder which apply to the plaintiff are, "often loses temper, often blames others for his or her mistakes or misbehavior, and has often stolen items of nontrivial value without confronting a victim (*e.g.*, shoplifting, but without breaking and entering)."  American Psychiatric Association *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision (DSM-IV-TR) 99, 102 (4th ed. 2000).  The record in this case reveals that the plaintiff throws a fit when other people say something bad about his mother, the plaintiff has been caught shoplifting, and the plaintiff blamed his shoplifting incident on his association with a "bad crowd."

The court finds the plaintiff fulfills the second prong of 12.05(C).  Because the APA considers the plaintiff's disorder to be a "clinically significant impairment," it must be more than a slight or minimal effect on the plaintiff's ability to perform work-related activities.  The court finds that the record in this case demonstrates that the plaintiff's behavioral issues preclude him from performing work activities.  The ALJ determined that despite his difficulties, plaintiff could perform simple repetitive unskilled work on a regular basis.  Despite the ALJ's acceptance of the Vocational Expert's testimony concerning plaintiff's ability to achieve gainful employment, the court finds that the ALJ's finding is not supported by the record as a whole.  Specifically, in the ALJ's proposed hypothetical to the Vocational

Expert, the ALJ proposes the higher I.Q. scores, with the comment that "the test scores are a success." (TR 461). Further, the hypothetical fails to account for plaintiff's demonstrated lack of problem solving skills, coping skills, and disruptive behavior disorder. Based on the court's review of the record, the court finds that plaintiff's impairment has more than a slight or minimal effect on the plaintiff's ability to perform work-related activities. Accordingly, the court finds that the ALJ's determination to disallow benefits is not supported by substantial evidence in the record. Rather, the court finds that the record supports a finding of disability sufficient to warrant the award of benefits.

THEREFORE, IT IS ORDERED that the claimant is awarded benefits in this case. The court remands and instructs the Social Security Administration to determine the amount of benefits due and payable to the claimant. A separate judgment shall be entered in accordance with this memorandum and order.

DATED this 10th day of August, 2007.

BY THE COURT:

s/Joseph F. Bataillon
Chief U.S. District Judge